IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NANNETTE ANN TOSH-ROBB,

    Plaintiff,

  vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

/

No. 2:16-cv-0180-TLN-CMK

FINDINGS AND RECOMMENDATION

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 12) and defendant's cross-motion for summary judgment (Doc. 16).

## I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on July 2, 2012, alleging an amended onset of disability on August 30, 2011, due to Fibromyalgia, rheumatoid arthritis,

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

1

inflamed lungs, disorders of the back, osteoarthosis, (Certified administrative record ("CAR") 48-50, 60-62, 131, 184-85). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on May 20, 2014, before Administrative Law Judge ("ALJ") Trevor Skarda. In an August 1, 2014, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 30, 2011 through her date last insured of December 31, 2012 (20 CFR 404.1571 *et seq*).

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

>    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
| 1 | 3. | Through the date last insured, the claimant had the following severe impairments: fibromyalgia, rheumatoid arthritis, and degenerative disc disease (20 CFR 404.1520(c)). |
| 2 | | |
| 3 | 4. | Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). |
| 4 | | |
| 5 | | |
| 6 | 5. | After careful consideration of the entire record, [the ALJ] finds that, through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant has the ability to lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; and sit, stand or walk for approximately 6 hours each per 8 hour work day. The claimant can occasionally balance, stoop, crouch, kneel, crawl and climb ramps, stairs, ladders, ropes or scaffolds. |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | 6. | Through the date last insured, the claimant was capable of performing past relevant work as a paralegal (119.267-026 light svp 7). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). |
| 12 | | |
| 13 | | |
| 14 | 7. | The claimant was not under a disability, as defined in the Social Security Act, at any time from August 30, 2011, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(f)). |
| 15 | | |

(CAR 10-19). After the Appeals Council declined review on December 9, 2015, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

3

Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

Plaintiff argues the ALJ erred in three ways: (1) by rejecting her treating physician's opinion without specific and legitimate reasons; (2) by failing to include any limitations for her upper extremities in the residual functional capacity (RFC) finding; and (3) by failing to provide specific reasons for finding plaintiff not credible.

**A.  Credibility**

As the credibility analysis impacts the other claims in this case, the court will first address that argument. Plaintiff contends the ALJ failed to make specific and adequate credibility findings. The defendant argues the ALJ considered many aspects of plaintiff's credibility, and the findings were sufficiently specific.

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather,

4

the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the ALJ's reasons for rejecting testimony as not credible must be "'specific, clear and convincing'." See Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is "able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As for any credibility assessment in this case, the only specific statement in the ALJ's opinion regarding plaintiff's credibility is:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the

<blockquote>
claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
</blockquote>

(CAR 16).

The ALJ discussed plaintiff's Adult Disability Report, Exertional Activities Questionnaire, and her medical records. Defendant contends those discussions are sufficiently specific credibility determination. The ALJ did not, however, specifically discuss plaintiff's credibility, nor did he relate plaintiff's credibility to the discussion of the evidence or plaintiff's activities. The conclusory statement quoted above is insufficient; such a statement fails to specify what testimony was not credible nor does it provide any specific reason why the testimony was not credible. This type of conclusory credibility determination fails to provide the court with enough information to meaningfully review the decision, and therefore cannot determine whether the reasons are sufficient and supported by the evidence. It is required "that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." Brown-Hunter, 806 F.3d at 492. Here, the ALJ failed to provide any reasons for discrediting plaintiff's testimony which is reversible error.

### B. Medical Opinions

Plaintiff contends that the ALJ erred in discounting her treating physician's opinion without articulating specific and legitimate reasons for so doing. Defendant counters that the plaintiff failed to point to any probative evidence to contradict the ALJ's determination that the treating physician's opinion was not well supported and inconsistent with the record.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given

to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Here, the ALJ stated, as to plaintiff's treating rheumatologist, Dr. Wiesner:

> Dr. Wiesner's opinion is given reduced weight as it appears to be based primarily on the claimant's subjective complaints. There are little if any objective findings that would necessitate the degree of limitations indicated by Dr. Wiesner, including evidence of muscle weakness or atrophy to the point that she can barely use her hands

> throughout an 8 hour day. In fact, the claimant's own restrictive extertional questionnaire and other submitted documents acknowledge far greater functionality than indicated by Dr. Wiesner. Finally, Dr. Wiesner's opinion is contradicted by the opinion of the examining consultative physician Dr. Fang Bai, who found the claimant able to do work activities at the light exertional level based upon the physical examination findings.

(CAR 19).

Plaintiff argues the reasons given were insufficient in that fibromyalgia is not the type of disease that has objective symptoms, but is reliant on the patient's subjective complaints of pain. Thus, the lack of objective findings is not a sufficient reason for discounting her treating physician's opinion. In addition, she contends the ALJ's vague statement as to inconsistent statements is insufficient in that he did not identify any specific inconsistencies. Finally, she argues reliance on the examining physician's opinion is insufficient because Dr. Bai completed an orthopedic evaluation and is not a rheumatologist; fibromyalgia is a rheumatological condition which was not addressed in the orthopedic evaluation.

Defendant counters that the ALJ rejected Dr. Wiesner's opinion not based on the lack of objective findings specifically relating to fibromyalgia, but rather the lack of objective findings to support her extreme limitations, such as muscle weakness or atrophy to indicate inactivity. In addition, defendant argues that the ALJ also found inconsistencies between Dr. Wiesner's opinion and the treatment notes from plaintiff's other treating physicians.

As discussed above, the ALJ committed reversible error for failing to articulate reasons for finding plaintiff's testimony not credible. He also relies on plaintiff's credibility in terms of the treatment of the medical opinions. As such, the defendant should reevaluate the medical opinions upon remand to the extent any further evaluation of plaintiff's credibility undermines the treatment of the medical opinions.

The undersigned is mindful that some of the reasons provided for not fully accepting Dr. Wiener's opinion may be acceptable. Defendant argues that the ALJ properly relied on the lack of objective findings to support the extreme limitations Dr. Wiener opined, and

that plaintiff does not point to any specific evidence in the record wherein it was determined that she suffers from muscle atrophy or has other objective indications to support her lack of movement. However, there is case law which explains the proper evaluation of fibromyalgia pursuant to SSR 12-2P. See Revels v. Berryhill, 874 F.3d 648 (9th cir. 2017). "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and Benecke." Id. at 662 (citing Social Security Ruling (SSR) 12-2P (2012), Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004)).³

        Here, the ALJ relied on his credibility determination, the lack of objective findings (including muscle atrophy, and strength), plaintiff's own statements, and the examining physician's opinion to discredit Dr. Wiener's opinion. Underlying the entire medical opinion analysis is the ALJ's finding that plaintiff was not fully credible. Given the unique nature of fibromyalgia, and the necessity for reliance on subjective complaints, the credibility determination in this case is even more imperative. As none was done, as set forth above, reliance on credibility cannot serve as an adequate basis for discounting Dr. Wiener's opinion. While there were other factors the ALJ discussed, as this case should be remanded for a new

---

³    The Ninth Circuit explained that:
Fibromyalgia is a 'rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." Benecke, 379 F.3d at 589. Typical symptoms include "chronic pain throughout the body, multiple tenderpoints, fatigue, stiffness, and a pattern of sleep disturbances that can exacerbate the cycle of pain and fatigue." Id. at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, *Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis*, Consultant, June 1996, at 1260). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." Id. (quoting Yunus, *supra* at 1260). Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." Id. The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." Benecke, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." Id.
Revels, 874 F.3d at 656.

credibility determination, the defendant should be directed to reevaluate the medical opinions as well.

### C. Residual Functional Capacity

Finally, in another related claim, plaintiff contends the ALJ erred in finding she had no upper extremity manipulative limitations. She argues the "ALJ failed to adequately explain why he was not assigning any upper extremity limitations despite positive examination findings, consistent reports of pain and other symptoms, and the consistent diagnoses of rheumatoid arthritis / rheumatoid nodules and fibromyalgia." (Motion, Doc. 12 at 18).

In essence, plaintiff contends the ALJ erred in formulating her RFC. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.

As far as plaintiff's limitations, the ALJ based the RFC on Dr. Bai's opinion following a comprehensive evaluation. During Dr. Bai's examination, plaintiff reported bilateral hand and foot numbness, pain all over but especially in the left upper trunk area, and the use of hand and wrist brace when her hands ache or hurt. Upon examination, Dr. Bai found plaintiff had a range of motion within normal limits for her upper extremities, including shoulders, elbows, wrists and fingers; she also had normal tone in her upper and lower extremities with manual muscle strength of 5/5. Dr. Bai opined, from an orthopedic point of view, that she had "[n]o manipulative limitations in the bilateral upper extremities, reach in all directions, or doing gross or fine manipulation." (CAR 285).

Plaintiff argues the ALJ failed to property assess her limitations as to her upper extremities. She contends that her rheumatological impairments were not accounted for in the RFC, and the medical evidence supports a finding that she suffered from nodules and nodes on

her upper extremities as part of her rheumatological impairments. Defendant counters that there is a lack of support for her position that her arthritis or any other condition was affecting her hands to the point that she was unable to use them. While Dr. Wiesner had found some limitations, her other treating physicians, Dr. Santos and Dr. Ferrari, did not, nor did Dr. Bai upon examination. Defendant contends that the evidence is susceptible to more than one rational interpretation, and the ALJ's decision should be upheld.

The ALJ did not clearly err in relying on Dr. Bai's opinion to the extent it set forth plaintiff's limitations on examination. However, upon review of plaintiff's credibility, if the credibility determination differs upon review, then to the extent Plaintiff's subjective complaints, and thus Dr. Wiesner's opinion, may impact the RFC, the defendant should review the limitations to determine whether there are any upper extremity limitations as Plaintiff contends.

### IV. CONCLUSION

Based on the foregoing, the undersigned finds the ALJ committed reversible error by failing to set forth specific reasons to discredit plaitniff's testimoeny. As her subjective complaints are relied upon by Dr. Wiesner, if upon review it is determined that the plaintiff's subjective complaints are credible, the defendant should review the medical opinions and the RFC to determine whether Dr. Wiesner's opinion should be credited and whether plaintiff has any upper extremity limitations.

Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 12) be granted;
2. Defendant's cross-motion for summary judgment (Doc. 16) be denied;
3. This matter be remanded for further proceedings consistent with this order; and
4. The Clerk of the Court be directed to enter judgment and close this file.

///

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2018

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE